```
                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF VERMONT

WENDIE and RICHARD DREVES,           :
                                     :
          Plaintiffs,                :
                                     :
     v.                              :   Case No. 2:11-CV-00004
                                     :
HUDSON GROUP (HG)                    :
RETAIL,LLC,                          :
                                     :
          Defendant.                 :
```

## OPINION and ORDER

Plaintiffs, Wendie Dreves and Richard Dreves have sued Defendant, Hudson Group Retail, LLC, ("Hudson"), alleging violation of the Equal Pay Act provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(d)(1), violation of the equal pay provisions of the Vermont Fair Employment Practices Act ("VFEPA"), Vt. Stat. Ann. tit. 21, § 495(a)(8), age and gender discrimination under the VFEPA Vt. Stat. Ann. tit. 21, § 495(a)(1), age discrimination under the Age Discrimination in Employment Act ("ADEA"), 19 U.S.C. § 623(a)(1), unjust enrichment under the doctrine of quasi contract, and breach of implied contract.  Hudson has moved to dismiss three of the Dreveses' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Hudson seeks to dismiss: 1) Ms. Dreves's claim that her termination was a breach of implied contract (contained in Count 3); 2) Ms. Dreves's claim that Hudson was unjustly enriched by uncompensated labor time

performed for them by her, and that she is entitled to compensation under the doctrine of quasi-contract (contained in Count 2); and 3) Mr. Dreves's claim that he is entitled to damages because he lost his health insurance as a result of Ms. Dreves's termination (contained in Count 3).

For the reasons that follow, Hudson's motion to dismiss is GRANTED in part, and DENIED in part.

**FACTUAL BACKGROUND**

For purposes of this motion to dismiss, the Court accepts as true all allegations set forth in the Complaint.  Hudson operates retail establishments at the Burlington International Airport.  Wendie Dreves formerly held the title of general manager of Hudson's Burlington operation, but was terminated in September of 2010 for allegedly unsatisfactory job performance. Ms. Dreves claims that the firing was unlawful for a number of reasons.  Relevant here, Count III of the Complaint alleges that Hudson had a policy and practice of providing Ms. Dreves with progressive discipline, that this policy and practice created an implied contract between Hudson and Ms. Dreves, and that Hudson breached this contract in its termination of Ms. Dreves.

Additionally, Ms. Dreves claims that while she worked for Hudson, "her corporate superiors . . . deliberately kept the operations understaffed," and that "[t]his understaffing required her to . . . work unfilled job positions and to put in

extensive overtime hours for which she was not compensated." In Count II of the Complaint, Ms. Dreves claims that she is entitled to "just compensation for the reasonable value of her time given [Hudson] under the doctrine of quasi-contract."

Finally, Ms. Dreves's spouse, Richard Dreves, alleges that he "was a third party beneficiary of his wife's employment benefits with [Hudson], and as a result of her termination lost his health insurance . . . requiring him to pay out of pocket for replacement coverage." In Count III of the Complaint, Mr. Dreves seeks damages as a third-party beneficiary. Hudson seeks to have the above three claims dismissed.

**DISCUSSION**

**I. Standard of Review**

The standard for reviewing a motion to dismiss pursuant to Rule 12(b)(6) is well-known, and has recently been articulated by this court:

> In *Ashcroft v. Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. 129 S.Ct. 1937, 1949-50 (2009). First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. This assumption of truth, however, does not apply to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.
> Second, a court must determine whether the complaint's well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

> the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin a "probability requirement," but it asks for more than a sheer possibility that the defendant acted unlawfully.

*Gadreault v. Grearson*, No. 2:11-cv-63, 2011 WL 4915746, at *4 (D. Vt. Oct. 14, 2011) (internal quotation marks and citations omitted).

**II. Ms. Dreves's Common Law Wrongful Termination Claim**

To sustain a claim of wrongful discharge under Vermont law, the claim "must involve the breach of an express or implied employment contract. At-will employees are thus barred from bringing wrongful discharge claims." *Cook v. Arrowsmith Shelburne Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (citing *Baldwin v. Upper Valley Servs., Inc.*, 644 A.2d 316 (Vt. 1994); *Taylor v. Nat'l Life Ins. Co.*, 652 A.2d 466 (Vt. 1993)) (applying Vermont law). Additionally, "[u]nder Vermont law, there is a presumption that employment for an indefinite period is employment 'at will.'" *Green v. Vt. Country Store*, 191 F. Supp. 2d 476, 480 (D. Vt. 2002) (citing *Havill v. Woodstock Soapstone Co.*, 783 A.2d 423, 427 (Vt. 2001)). However, this presumption "is simply a general rule of contract construction," and "imposes no substantive limitation on the right of contracting parties to modify terms of their arrangement." *Dillon v. Champion Jogbra*, 819 A.2d 703, 707 (Vt. 2002) (internal quotation marks and citations omitted).

4

Hudson argues that the Complaint "references no agreement or other basis for any allegation that [Ms. Dreves] could not be terminated at will." The question is whether Ms. Dreves has pleaded facts sufficient to support the claim that Hudson modified Ms. Dreves's at-will status so as to create an implied employment contract, and then breached that contract.

The Vermont Supreme Court defined evidence that could overcome the presumption of at-will employment in *Sherman v. Rutland Hospital, Inc.*, 500 A.2d 230 (1985). The *Sherman* court held that "the employee and employer could bargain for, and agree to be bound by, termination provisions set forth in the personnel manual, even if the bargain applies only to the employee before the court and not the entire employment population." *Id.* (citing *Sherman*, 500 A.2d at 232). Moreover, "[p]ersonnel policies that commit an employer to a progressive discipline system present a triable issue of fact on whether an employer may terminate an employee only for just cause." *Havill*, 783 A.2d at 428.

Ms. Dreves alleges that: 1) Hudson had a policy and practice of providing her with progressive discipline and requiring just cause for her termination; 2) that policy and practice modified her at-will status and created an implied employment contract; and 3) Hudson breached that contract by violating its policy and practice of providing her with

5

progressive discipline and requiring just cause for her termination.

The Complaint provides more than a mere "threadbare recital" of the elements. Implied employment contracts may be created a number of ways. *See Raymond v. IBM,* 954 F. Supp. 744, 748 (D. Vt. 1997) (collecting cases) ("At-will employment contracts may be modified by express agreement, statute, public policy, the personnel policies or practices of the employer, and actions or communications by the employer reflecting assurances of continued employment.") In her complaint, Ms. Dreves has specifically alleged that Hudson created an implied contract with her by implementing a "policy and practice of providing her with progressive discipline and requiring just cause for her termination." This statement rises above the "conclusory statement" that Ms. Dreves's at-will status was modified, and is sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Accordingly, the allegation is sufficient to allow this court to "accept [it] as true and draw all reasonable inferences from [that] allegation[] in the plaintiff's favor."

Second, Ms. Dreves's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." As Ms.

Dreves noted in her reply memorandum, "at-will employment relationships 'have fallen into disfavor.'" Pl. Mem. in Opp'n to Rule 12(b)(6) Dismissal of Certain Claims 2 (citing *Dillon*, 819 A.2d at 706 (Vt. 2002). It is not uncommon for employers to establish disciplinary policies and procedures that have the potential to modify at-will employment relationships. *See e.g. Green v. Vt. Country Store*, 191 F. Supp.2d at 480; *McKenney v. John V. Carr & Son, Inc.*, 922 F. Supp. 967, 975 (D. Vt. 1996); *Ross v. Times Mirror, Inc.*, 665 A.2d 580, 583 (Vt. 1995). Ms. Dreves's allegations that Hudson established a disciplinary policy which it then failed to apply to her "plausibly give rise to an entitlement to relief," because—as described above—under Vermont law, such policies can change an employee's at-will status (creating an implied contract). Failure to follow such policies can breach that contract.

Hudson argues that the alleged policies and practices at issue here could not have altered Ms. Dreves' at-will status because the Complaint alleges that the policies and practices were applied to her alone. Hudson relies on the Vermont Supreme Court's holding in *Ross v. Times Mirror*, that "[a] proffered procedure or practice may be enforceable, if it is clearly established and uniformly and consistently applied throughout the company." *Ross*, 665 A.2d at 585. *Ross*, however, dealt with a unilateral contract modification claim. *Id*. at 583. Here,

7

Ms. Dreves has alleged facts sufficient to support a bilateral contract modification claim. This Court has reiterated *Sherman*'s fundamental holding that "[a]n employee and an employer may contractually bind themselves to certain termination procedures." *LeBlanc v. United Parcel Serv., Inc.*, 972 F. Supp. 827, 832 (D. Vt. 1997) (citing *Sherman*, 500 A.2d at 232). *Sherman* continues to hold that an employer and employee may "bargain[] for, and agree[] to be bound by, termination provisions set forth in [a] manual, *even though those provisions may not be binding against the employer as to any other employee*." *Sherman*, 500 A.2d at 232 (emphasis added).

Thus, Ms. Dreves's allegation that Hudson had a "policy and practice of providing *her* with progressive discipline and requiring just cause for *her* termination" plausibly supports a claim. It is not fatal that Ms. Dreves has failed to allege that the policy was applied company-wide. Accordingly, the Court need not reach the issue of whether the application of disciplinary policies "to Ms. Dreves's situation meant that, as Hudson's only Vermont general manager, the policy had company-wide application in Vermont."

The Court notes that Ms. Dreves incorporated numerous facts beyond those articulated in the Complaint into her Reply Memorandum. Defendants then felt compelled to respond in kind in their own response. Of course, "[t]he court . . . does not

8

ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss." *Halebian v. Berv*, 644 F.3d 122, 131 (2d Cir. 2011).  There are exceptions to this general practice, but none apply here.  *See id*. n. 7.  Accordingly, the above analysis considered only the facts set forth in the Complaint.

### III.  Ms. Dreves' Unjust Enrichment Claim

Hudson argues that Ms. Dreves's unjust enrichment claim is preempted by the FLSA, and should be dismissed.  However, Hudson concedes that "if Plaintiffs were seeking any relief not provided for by the FLSA, common-law claims for such relief likely would not be preempted and Plaintiffs would likely be allowed to prosecute such claims."  Reply Mem. of Law of Df. 8 (citing *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 462 (E.D.N.Y. 2011).  Hudson then argues, however, that Ms. Dreves's unjust enrichment claim is preempted by the FLSA because "allegedly unpaid overtime compensation . . . *is* expressly provided for by the FLSA."  The question is whether this is in fact true in Ms. Dreves's case.  It is not.  Rather, because she was an "exempt" employee, the FLSA does not provide Ms. Dreves with a claim for unpaid overtime, and thus, her common law unjust enrichment claim is not preempted, and may proceed.

The FLSA sets forth a "comprehensive remedial scheme" designed to "correct and . . . eliminate . . . [labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers]." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999); 29 U.S.C. § 202(b). It provides "express provision for private enforcement in certain carefully defined circumstances." *Herman*, 172 F.3d at 144 (quoting *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 93 (1981)). Sections 206 and 207 of the FLSA set forth remedies for wage and hour violations. 29 U.S.C. §§ 206-07. However, certain classes of employees are "exempt" from the provisions of sections 206 and 207. 29 U.S.C. § 213. Relevant here, "[t]he provisions of sections 206 and 207 . . . [do] not apply with respect to any employee in a bona fide executive, administrative, or professional capacity." *Id*. at § 213(a)(1).

Hudson concedes that Ms. Dreves was an exempt employee. Moreover, the Complaint states that Ms. Dreves "held the job title of general manager of Hudson." That statement suggests that Ms. Dreves was employed by Hudson in "a bona fide executive [or] administrative . . . capacity" as defined by the FLSA, and thus was an exempt employee. Because Ms. Dreves was an exempt employee, she cannot bring an action for unpaid overtime under the FLSA. 29 U.S.C. § 213. As one court has noted, "[i]n an

action to recover unpaid overtime wages under FLSA, a plaintiff must show that: "(1) he was an employee who was eligible for overtime ( [ *i.e.,*] *not exempt* from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F.Supp. 2d 497, 507 (E.D.N.Y. 2011) (quoting *Hosking v. New World Mortg., Inc.,* 602 F. Supp. 2d 441, 447 (E.D.N.Y.2009))(emphasis added, internal quotation marks omitted).

In contrast, "[c]laims for quasi-contract are based on an implied promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." *DJ Painting, Inc. v. Baraw Enterprises, Inc.*, 776 A.2d 413, 417 (Vt. 2001) (citing *In re Estate of Elliott,* 542 A.2d 282, 285 (Vt. 1988)). To prevail on such a claim, a "plaintiff must prove that (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Center v. Mad River Corp.*, 561 A.2d 90, 93 (Vt. 1989) (citing *In re Estate of Elliott,* 542 A.2d at 285). The elements required to prove an unjust enrichment claim are distinct from those required to prove a claim under the FLSA.

11

In their memoranda, both parties exert much effort addressing the question of whether state common law remedies might coexist with the FLSA as a general matter.  The Court need not address that issue, however, because both parties agree that state claims are not preempted where the FLSA and state law claims are independent.  *Sosnowy*, 764 F. Supp. 2d at 463 (E.D.N.Y. 2011).  The FLSA simply does not provide a remedy for exempt employees.  Ms. Dreves has pled facts sufficient to allow the Court to infer that she is an exempt employee, and Hudson has agreed that she is an exempt employee.  Because "state common law claims [that] seek recovery for claims that are unavailable under the FLSA . . . are not preempted," Ms. Dreves' claim for unjust enrichment need not be dismissed.  *Id*.

This result is consistent with "the central purpose of the FLSA," which is "to enact minimum wage and maximum hour provisions designed to protect employees."  *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000).  Moreover, it is consistent with "Congress' intent to allow state regulation to coexist with the federal scheme." *Overnite Transportation Co. v. Tianti*, 926 F.2d 220, 220 (2d Cir. 1991).

**IV.  Mr. Dreves' Standing**

The Complaint alleges that "Richard Dreves was a third party beneficiary of his wife's employment benefits with defendants, and as a result of her termination lost his health

12

insurance . . . requiring him to pay out of pocket for replacement coverage." Complaint ¶ 10. As an initial matter, the complaint does not clearly articulate the grounds on which Mr. Dreves seeks relief. However, the complaint suggests that Mr. Dreves seeks relief through: 1) the age discrimination claim under the ADEA; 2) the gender and age discrimination claim under the VFEPA; and 3) the common law wrongful termination claim.

It is well established that the ADEA does not afford a "direct cause of action to a non-employee due to discrimination against his spouse." *Moss v. Stinnes Corp.*, 169 F.3d 784, 785 (2d Cir. 1999). Thus, Mr. Dreves has no claim under the ADEA.

The Vermont Supreme Court has not directly addressed the question of whether the VFEPA affords a cause of action to spouses of employees who allege discrimination. However, related precedent is useful. The Vermont Supreme Court often bases its construction of the VFEPA on the federal courts' interpretation of Title VII of the Civil Rights Act of 1964. *Payne v. U.S. Airways Inc.*, 987 A.2d 944, 948 (2009) (citing *Lavalley v. E.B. & A.C. Whiting Co.,* 692 A.2d 367, 369 (1997)). This is because "the VFEPA is patterned on Title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under VFEPA are identical to those under Title VII." *Id*. (quoting *Hodgdon v. Mt. Mansfield Co.,* 624 A.2d 1122, 1128 (1992)) (internal quotation marks omitted). Similarly, the

13

Vermont Supreme Court has noted that "[t]he Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and its precedent provide useful analytical tools" in applying the age discrimination provisions of the VFEPA. *Ross*, 665 A.2d at 586. Since the federal courts have held that the ADEA prohibits claims by employees' spouses, it seems likely that the Vermont Supreme Court would hold that the VFEPA also prohibits such claims. Mr. Dreves therefore has no claim under the VFEPA.

This leaves the question of whether Mr. Dreves has standing as a third-party beneficiary to his wife's employment contract. "Whether or not a party is a third-party beneficiary is based on the intention of the original contracting parties." *Morrisville Lumber Co., Inc., v. Okcuoglu*, 531 A.2d 887, 890 (Vt. 1987) (citing *Broadway Maintenance Corp. v. Rutgers*, 447 A.2d 906, 909 (N.J. 1982). Proving that a party is a third-party beneficiary requires the introduction of proof that the contracting parties "entered into their agreement in contemplation of conferring a benefit on the plaintiff." *Id*. The Complaint fails to state any facts that would allow the Court to infer such contemplation. Rather, the complaint states the bare legal conclusion that "Richard Dreves was a third party beneficiary of his wife's employment benefits." Complaint ¶ 10. Because the Complaint lacks a factual basis which would allow the Court to infer that Mr. Dreves was in fact a third-party beneficiary of

his wife's employment benefits, it fails to state a plausible claim sufficient to find recovery for Mr. Dreves.  Accordingly, his claim is dismissed.

**CONCLUSION**

For the reasons set forth above, Hudson's motion to dismiss Ms. Dreves's common law claims for wrongful termination and unjust enrichment is DENIED, and Hudson's motion to dismiss Mr. Dreves's claim is GRANTED.


Dated at Burlington, Vermont this 29th day of February, 2012.


                                    /s/ William K. Sessions III
                                    William K. Sessions III
                                    District Judge